Mr. Ruder, did I pronounce that correctly? Good to have you here. Likewise, Your Honor. I understand you're appointed. I am. I admire these lawyers that are appointed in criminal cases. I used to do some of that myself. Thank you for coming. Thank you for having us, Your Honor. On behalf of Mr. Marcus Taylor, I note, Your Honor, this is a new panel. This case had come before this court earlier. None of the issues we have raised here, of course, were raised when a different panel heard about the activities of the Baltimore Police Department's Gun Trace Task Force, a very sad tale, indeed, which led to the conviction of several Baltimore City Police officers, one of which is my client, Mr. Taylor. The jury found Mr. Taylor guilty of participating, Your Honor, in a RICO conspiracy. It also found him guilty of substantive RICO counts. It also found him guilty of a Hobbs Act robbery. The jury found, as to count one, that Mr. Taylor had committed a racketeering act number eight, which was a robbery of one Mr. Stephenson. Mr. Shawn Whiting, the other person that is relevant to this particular proceeding, was not named at all in count one of the indictment. The jury also found, which is relevant here, that Mr. Taylor was guilty of count two, that on January 24, 2014, he did commit another racketeering act, which was a conspiracy to commit the robbery of Mr. Shawn Whiting, but the government had failed to prove that he actually committed the robbery of Mr. Whiting. In that same count, it did find that he had committed a racketeering act eight, which was a robbery of Mr. Maurice Stephenson. Did you try the case? I did, Your Honor. Did you try the case? I did not, Your Honor. You're just on the appeal. That's not on the appeal. But Judge Blake tried the case. Judge Blake did try the case. So she's the trial judge and the sentencing judge? Yes, Your Honor. And the judge that you're appealing here? That's exactly right. She's been in it longer than you have. Yes, Your Honor. Mr. Whiting testified during the trial, and he also gave an affidavit in support of restitution, which is the issue that we're here for this morning, that he had a total of $23,970 in cash stolen from him by my client and others, and $1,831.08 of personal property also stolen from him. He also testified he had 4.5 kilograms of heroin in his home near the places where his property and money was stolen. He also alleged that 1.5 kilograms of heroin were stolen by the members of the Baltimore Police Department. He is not seeking the return of his heroin or money in kind. But during the trial, Your Honor, he testified that $15,970 found in his closet came from, quote, selling drugs, end quote. Unequivocally, never backed off that. He made it clear that money came from the act of selling drugs. He testified that his occupations, in fact, were painter and drug dealer. So can I ask you, I mean, there's maybe a really good policy argument why you shouldn't allow restitution in cases like this. Maybe there is, maybe there isn't. What in the language of the statute exempts conduct like this? I mean, the Supreme Court has told us we've got to read the statute. What word in the statute says that we don't award restitution in this situation? Well, Your Honor, the operative language is found in 18 U.S.C. 3663A, which defines the word victim. Because before a person is able to receive restitution, they must be determined to be a victim under that act. I agree. We can see that these particular actions do fall under the Mandatory Victim Restitution Act. We take issue with the fact that they are deemed to be victims. The definition itself, Your Honor, I quote, a person directly and proximately harmed as a result of the commission of the offense for which restitution may be ordered. That's the definition. So are you saying they're not victims because they're not harmed because it wasn't rightfully their property in the first place? Your Honor, that's exactly correct. So you want your client to keep the money then? Your Honor, the money that he stole from the non-victim. Well, what should happen, Your Honor, is that money should go to the state of Maryland. The fact is that the law is very clear that if a person is in control of stolen property or anything that's illegally obtained, cash included, the moment that they have it, it's based upon an act of some criminal activity. That property is not theirs. It's a property of the- Wait, can I go back to the- He was. So the crime of robbery is the taking of the property of another by the threat of force or violence, is it not? It is. But if they're not victims because it wasn't really theirs, how could you have a robbery in the first place in that situation? Well, I think, Your Honor, that the Maryland robbery is a little bit more expensive than that because it can be the person's property or it can be somebody else's. But this person was convicted of Hobsack robbery or Hobsack robbery is a predicate under RICO. I don't care what Maryland robbery law says. I care what federal robbery, and federal robbery is the taking of the property of another. Yes. So I guess you're asking us to simultaneously say that this money was the property of another for purposes of making your client guilty of robbery, but it's not the property of another for purposes of making them a victim under the mandatory. I just don't understand how those two things can both be true. Well, Your Honor, I stick to the fact that I believe that money belonged to the government, period. But I'm asking you to explain why there's not a contradiction between saying it's the property of another for purpose of the substantive offense, but not for purposes of restitution. Your Honor, I don't think I can really resolve that kind of- Okay. So let me ask you another thing that we ran down. This is sort of a facetious question because I suspect you're not. Are you familiar with section 140 of the first restatement of restitution? I probably am not, Your Honor. All right. Well, it has a hypo that strikes me as pretty directly on point here because it says, quote, A steals B's chattels, C steals them from A. So again, A is a thief who is then stolen from. It says A is entitled to restitution from C, even though A is a thief. And then what it goes on to say is, like, of course, B is also entitled to get it back from A. But when the question is, who has the better claim as between thief one and thief two? Thief one has a superior claim to thief two. And if I transport that onto this case, it sounds like drug dealer has a superior claim on the money to cop who robs drug dealer. Why is that not just pretty much directly on point? I can only say this, Your Honor. Of the myriad of cases that I have read, as has my opponent, government, that particular argument never has shown its face in any opinion. I agree. This does not appear to have been litigated very often. I agree. And Mr. Reuter, if the government had sought forfeiture here, who would have the better argument for those funds? Who would have to show they were an innocent owner to take them from the government that was forfeiting them? These defendants wouldn't be able to show that, I mean, sorry, not the defendants, the drug dealers would not be able to show they were innocent owners. And the government would be able to forfeit that property. They forfeit contraband all the time without making charges. That's exactly right. I mean, this case is kind of unique, quite frankly, Your Honor, in that it seems to me that the reason that we're here is because these two victims, one of which was actually convicted of his conduct and spent some time in jail before his conviction was vacated. The other was charged and remained in jail until his cases were dismissed by the Baltimore City State's Attorney's Office. They also admitted to being drug dealers here. They admitted these funds were drug proceeds, at least much of the funds were. And they were granted immunity. Why did they have to be granted immunity? Because they were fairly guilty of drug dealing. That's exactly correct, which I think then sets in the motion why we're here today. One would hardly ever see these kinds of cases but for the actions of the government. I'm not faulting the government. I'm only saying by reason of the immunity. And Judge, I don't even know, by the way, because the record doesn't reflect it. As you might guess, I never had access to all the discovery, which was monumental in the prosecution of the case. But I have no way of knowing as to how it was that the restitution issue arose to begin with. I don't know whether these gentlemen asked for order for you to maybe testify, perhaps we can help you with the restorations money. I don't know that. Nowhere in the record does it appear. Well, isn't the other explanation that the government realized that the Mandatory Victims Restitution Act requires restitution to all victims of the offense and these people were victims of robberies? Well, that could well be, Judge. All I know is there's nothing in the record to demonstrate that. I don't know what happened. So I guess let's posit that these folks were drug dealers and let's posit that these were drug proceeds. Let's take as a given, I think you and I agree, the government has a superior claim on this money to anybody at that point. Yes. But the question isn't whether the government has a superior claim to both your client and the drug dealers. The question is who has a superior claim on the money as between your client and the drug dealers? And what plausible argument is it that your client has a superior? I mean, it seems to me the most sensible thing that should happen here is that restitution should be ordered and the government should instantaneously institute a forfeiture action against any money they think were drug proceeds. But why does your client get to keep the money? Mr. Taylor, Your Honor, should not get to keep the money. The money should be forfeited to the United States or to the state. But your argument is that your client has a superior claim on the money to the people he robbed of that money. And I just don't see why that would possibly make sense. Your Honor, I don't necessarily believe that is the exact way we're framing our argument. It's that the victim is not entitled to it. And whether or not the government is entitled to it, or the state of Maryland is entitled to it, or my client is entitled to it, it's something that I don't really reach. We don't reach in our briefs. We reach rather, it's not his money, by reason of the fact that it's fruits of a crime. And he ought not to have it and have the benefit of it. Well, let me ask you a hypo that I think strikes me as entirely plausible. Let's say some of the money your client stole is drug proceeds, and some of the money your client stole is not drug proceeds. I mean, even drug dealers have some money that doesn't always come from drug dealers. And the problem is, at this point, it's hard to figure out which money is which. And so then the question is, there's going to be some amount of money about which either it is not drug proceeds, or it's going to be impossible to determine whether it is drug proceeds. And part of this, to me, strikes me as a risk of error problem, right? Because if you win this argument, then the default is that your client gets to keep the money unless the government can file a forfeiture action against your client to establish that it was drug proceeds. In contrast, if your client has to give it to the victims of the robbery, then the victims of the robbery get to keep it unless the government can prove that it was proceeds of a crime. And essentially, it's like a risk of error problem. What happens to money that can't be definitively established one way or another as proceeds? Under your argument, your client, the robber, gets to keep the money. Under the government's argument, the victim of the robbery gets to keep the money. And why doesn't that make so much more sense? Well, Your Honor, I think there's another part of the MPRA which actually indicates that a court cannot determine. Right, right. That provision says if the court cannot determine your client, the Hobbs Act robber, gets to keep the money. And I don't see how that possibly makes sense because he's the robber, and these are proceeds of his robbery. Why does that make any sense? That, Your Honor, is also a difficult point. I want to go back to one thing you said earlier, though, however, Your Honor, and that is, in this case, Mr. Whiting admitted the 16 grand was drug money. What about the money he didn't admit was drug money? What are we going to do with that? Judge Blake, in my judgment, did not make a really, shall we say, good record as to where the money came from. And the reason being, Judge, is because she was under the belief that the MVRA demanded the return of that, demanded restitution, and that the source of the money was quite frankly irrelevant. And why isn't, I guess I'll just close. I'll ask this question one more time, and I promise I won't ask it again. But why doesn't that make more sense to say, look, under any conceivable world, your client is the robber. He has no claim to this money at all. There may be a fight between the victims and the government about who should get the money. But that should be litigated in a dispute between the victims and the government. Your client has nothing to do with it. He's the thief here. Close call, Your Honor. It seems to me that what should happen is that if a court cannot tell, not able to discern the source of the money, then there should be no restitution ordered at all. And they quote, victim end quote, take it up in a civil court. They can do anything that they want to do. But the whole idea of where we think we are in the law is that the federal court should not be in the business of giving back money to a person who has admitted that what they possess is the fruits of a crime. It simply goes against every- And your client's being convicted of stealing the money. He was convicted of stealing the money. Yeah. So what do you want us to do as to Judge Blake's ruling? Number one, Your Honor, is that we're asking the court to remand this case with instructions from the court to determine for sure what is drug money and what's not. And if the judge can't determine that, well, then restitution should not be ordered because no section of the law permits that. That's what we're asking the court to do. And in the case, Your Honor, of Mr. Whiting's $15,970, there's already an admission as to what that is. And that, she should indicate, is not, on remand, is not subject to restitution because it is the fruits of a crime. All right. Let's see what the government has to say about this. Mr. Selwood? Good morning, Your Honor. May it please the court. I'm Patrick Selwood on behalf of the trial. Did you all try the case? I'm sorry, sir. Did the two of you try the criminal case? Mr. Wise did. Mr. Wise tried the criminal case. But we do have somebody here who was actually in the trial. Yes, yes, we do. Good to have you here, sir. If we can, I'd like to be able to redirect this to a point or a question that Judge Heitens had asked. And that is the hypothetical that was brought to us from the restatement on restitution, where A steals from B and C steals from A, Yeah, I really don't think, they don't do the letters very well. It would be much more straightforward if A steals from B and B steals from C or something. It's very much like an LSAC question. But I think that the restitution, I think that the restatement gets it right for many of the reasons that we articulated in the brief. First and foremost being that the NBRA, there's nothing within the statute that would allow for the court to find that the middle victim there is anything other than a victim. They meet the statutory criteria. They've been directly and proximately harmed by the offense of conviction. And there's nothing within the NBRA that instructs or even allows the court to look behind the source of the money. So can I ask you about what I think the government's textual problem is? How do I, I guess I take as a given that we don't get, if I steal cocaine from you, you don't get restitution for the cocaine I stole, right? Why not? What in the statute tells me that you don't get restitution for the, I mean, obviously I'm not going to, the government's not going to give you back the cocaine because the cocaine is contraband and the meds in your hands, it's contraband in your hands too. But why don't you get like the street value of like what, I mean, other than that would be insane. But I mean, their argument is that your position is a little bit insane. So I guess I'm trying to distinguish the contraband situation from this situation. In particular, how do I square the contraband situation with the language of the statute? Can you help me with that? I think it's an excellent distinction to make. And the difference between the cocaine and the monies that are, and personal property that are believed to be connected to drug proceeds is that the possession of cocaine is inherently illegal. It's not ubiquitous like money. There is no circumstances in which someone can possess cocaine and for that to be legal. And there's plenty of case law out there. No, no, I understand all of that. I'm trying to figure out why the language of the statute is consistent with the view that you don't get restitution for the cocaine. What language in the statute says you don't get restitution for the cocaine? I think with the, with regards to the MBA, it'd be the provision that talks about the victim having a pecuniary interest in the property that's stolen. I believe that's subsection C1. And it's impossible to have that as correct. What about the co-conspirator exception that you can't get restitution? You know, like, I guess I'm thinking of this as the opening scene of the Dark Knight, right? A bunch of people execute a robbery and then one of the robbers steals from one of the other robbers. I gather there's case law that says you basically one co-conspirator can't get restitution from another. Are you familiar with those cases? I absolutely am, your honor. And the cases cited in the government's brief, along with those cited by Judge Blake, a number of them talk about the co-conspirator exception. And all of them, there are seven cases altogether, and they all come to the conclusion that a victim, someone who meets the criteria of victim, cannot otherwise be disqualified as a victim unless they meet the co-conspirator exception, which is a narrowly tailored exception. And what's the basis in the statute for disqualifying co-conspirators? Because the definition of a victim wouldn't otherwise make sense. Someone cannot be both the perpetrator of the offensive conviction and the victim of the offensive conviction. In other words, someone can't be ordered to pay restitution for themselves. That's how, that's, I believe, the... Oh, I guess I'm a member of the partnership in crime and I can't get restitution from the partnership of which I was a part. That's the idea. And I believe the keynote case from that comes from the Ninth Circuit, Lee Flair, I believe it is. But I'm glad to bring up the was an intent, was different than his predecessor statute in that it's a shall issue statute. It's a mandatory statute. And Congress was very purposeful in the language that it put there. And it put in three exceptions, none of which apply in this case. And those exceptions, and when I say exceptions, I mean where a person can be found to be a victim as defined under subsection B, so directly and proximately harmed by the offensive conviction, a covered offensive conviction. And yet that person doesn't get paid restitution. And those three circumstances are where there are too many victims in the case that would make ordering restitution impractical. And the best type of scenario I can think of is if there's a large scale environmental type crime. Doesn't that also come up in the child sex abuse materials cases where there are literally often untold numbers of victims? That's right. That would probably be a better, more practical example. The second under the same subsection of the statute is where the court in order and restitution would be faced with complex issues of fact and causation that would essentially turn the sentencing phase into a full-blown trial. And in that instance, Congress has indicated while someone might meet the definition of victim, they're not going to get paid because that's not what the purpose of this statute is for. We don't want district courts at the sentencing phase to be launching into civil trials. And the last bit, as we just discussed, even though it's not expressly spelled out in the text, there's no logical way in which you can escape it. And that is the co-conspirator exception. But there are other cases that deal with this issue that don't also deal with co-conspirators. I have to tell you, I'm troubled at the notion of the court being involved in giving drug proceeds back to drug dealers. In a time and an era where the public seems to have some issues with the credibility of the judiciary, I'm extremely troubled by it. And I want to walk you through some cases that I think deal with the issue of contraband and ill-gotten gains. Are you familiar with Azaria, a case out of the Eastern District of North Carolina? I am not, Your Honor. All right. In that case, a defendant did rob drug dealers. And when the court dealt with it, the PSR said there'll be no restitution here because returning contraband isn't appropriate. And I'll read to you from that opinion at the very end of it. In the PSR, probation notes restitution would be inappropriate as it would return contraband to the victim. See United States versus OJCARA. It is intuitively obvious that Congress did not intend to have the federal judiciary take the lead in rewarding through restitution orders persons robbed of monies they had obtained by unlawful means. This is the case I thought was most similar to this one because the defendant knew of folks who were drug dealers and made a practice of breaking them to their homes and stealing the drug proceeds. There was no indication from the opinion that those drug dealers were ever charged. But again, I don't think the government sought restitution in that case. I think this is, I'll use the word unusual, highly unusual for the government to be asking for these drug dealers to get contraband back. So that was noted in this PSR. And if you look at the Martinez case, are you familiar with that one? Yes, I am, Your Honor. All right. So the casino, which obviously was not complicit in the robbery that Mrs. Martinez had committed, but they were operating illegally as a casino and the court would not return or order restitution in that case. And then you have the cases that do discuss the co-conspirator exception. But I do think that what they're getting to is that these are ill-gotten gains. Let me read from another case that makes reference to the ill-gotten gains. Beg your indulgence just a moment as I... I think it's the O.J. Cara case, even though it affirms the restitution order, it says it is because the defendant cannot show that there were ill-gotten gains on the part of the victim. Here, we know we have ill-gotten gains. You're asking the court to participate in returning contraband, illegal proceeds, drug money back to drug dealers. And are we further complicit in the fact that I doubt they pay their taxes on this money? I mean, there's just no end to this. I understand you went after the greater wrong here. We cannot have corrupt law enforcement. And it's an outstanding case that you made. And you've got your guys and they're going to go to here. We do not turn around and give drug money back to drug dealers. And the line of cases generally are basing that on the absurd result of that. But I think there may be some other ways within the restitution act to also get there. But I would ask you to address these cases and the policy concerns that the court might have. Certainly, Your Honor. And then let me start by saying that the United States Attorney's Office is very much of like mind when it comes to the concept of arming drug dealers with more resources. Of course, that is a principle, a goal of our office, of any U.S. Attorney's Office. That's not something we want to do. We also have an obligation to enforce the NBRA without fear of favor as the statute's written. And so, if I can first address two points of fact, which I think go to the cases that you mentioned. And the first is that- You're familiar with those cases? I am familiar with the Martinez case. I am not familiar with the Eastern District of North Carolina case, but I gathered from your summary. It actually, it sounds quite familiar or similar to the United States v. White case, which was the Fifth Circuit decision in which the Circuit Court affirmed the District Court's award to a drug dealer, award of restitution to a drug dealer who was robbed during a Hobbs Act robbery. So, it came out differently, but a similar fact pattern. You also mentioned Benton. You cited Benton in your brief as a string site. That was where one gang member killed another gang member and he was ordered to pay for the funeral. But I'll quote Benton in that, as the government rightly observed, restitution was not awarded for the individual's drug dealing or gang membership, but rather for their funeral expenses. That's correct, Your Honor. And we don't dispute that. But what the take home or the relevance of Benton is that the court did not disqualify their victim status because of these alleged prior bad acts or this distasteful, potentially criminal behavior. And that's what we're saying here is that there may be evidence that Mr. Whiting and Mr. Stevenson were or had at some point been drug dealers, but simply because they had been doesn't take them, they've met the statute's criteria victim. You immunized them here. Why did you have to immunize them? And they gave statements about this very money being drug proceeds and implicated themselves as drug dealers. But Stevenson actually did not. The two factual points, I think, and this gets to your question. There's no finding in the record of this case that the proceeds of the money, the $204,000 taken from Mr. Stevenson, is traceable to illegal proceeds. He testified that he was a truck driver since I believe 2012, and that he and his wife were in the process of And I'm not sure how any of that helps you, because Mr. Reuter would say that's exactly the point. The district court made no effort to determine which, if any, of this money was drug proceeds. The district court said it was legally irrelevant, and maybe that was right, but that's what the district court said, that I don't need to get into any of these questions about where this money comes from or doesn't come from. Judge Blake in this case, just to sort of put her fact finding in context, she presided over all eight officers' cases. She was there for every PSR sentence. Great, but she didn't make any facts findings about where any of this money came from. The witnesses were testified that this money was stolen from them. That's a presumption. In any other case, if there are no allegations... No, no, but what you're just saying is maybe it's true that some, most, all of this money wasn't drug proceeds, and if Judge Blake had found that, we would review that for clear error, but she didn't find that, and whether she could have found that or not doesn't seem relevant when she quite clearly didn't make a finding for that. The problem with that, Your Honor, I see too, and this gets to your policy concerns that you raised, Judge Lin, and that is, one, there's nothing in the statute that requires or even allows... Oh, no, I agree, right. And secondly... So, maybe it's legally irrelevant, but I guess you were going off to, like, under the facts and circumstances of this case, maybe she could have found X. I don't see how that's an option that's available to us. I think that she, I think there's no finding that these were illegal proceeds. Now, I think I understand what you're saying, that she didn't go a step beyond that and say that these all were legitimate or 75 percent or proceeds, but she definitely did not find that they were all, and with regards to Mr. Stevenson's $204,000, she didn't find that any of it was from illegal proceeds. Does the government seek civil forfeiture in cases where they haven't brought criminal charges? All the time. I believe so, yes. Yes, they do. They take the money that they find within whatever stop they've made or investigation, and sometimes they don't bring the charges. And if those people have a claim to that money, they can show up in the civil forfeiture action and try to establish they have a right to the proceeds. But on the topic of forfeiture, and I do want to return to your two cases momentarily. Forfeiture, as you're well aware, forfeiture and restitution are very distinct concepts. They're governed by different authorities, they have different processes, and they have different purposes. But your point was, there's just no finding here. There's just no finding. I've got immunity being granted. I've got admitted testimony, statements about drug money and drug proceeds. And then I also know that the government does seek forfeiture without findings or criminal charges being brought. Forfeiture would not be applicable in this case because, one, they weren't charged, obviously. But also, the legal... Are you saying you would not have had a basis for forfeiting that money? No, we would not have. The proceeds, I mean, the facts as they have been presented, the proceeds are not all directly traceable to illicit activity. And the testimony about the $15,000 from the closet that did connect it to drug activity was under a grant of immunity. So, we wouldn't be able to use it. Oh, okay. I understand with the grant of immunity. Where is the money right now? His client doesn't have the money, does he? That's a good question. I don't believe his client has the money. I can't imagine you seized it from him and then gave it back. No. You don't know where the money is. To the extent it hasn't been spent or stashed or spent elsewhere, it could have been... I'm not sure. I would hope it would be in evidence or sitting somewhere. I mean, why would it be gone, spent? Well, it's possible that someone steals $200,000 from a safe and then goes off and spends it or is able to hide it some way such that the government can't find it. Oh, I'm sorry. I thought you got the money when you made the arrest, but I may not have the timing right of when you made the charges against these particular bad cops. Okay. Understood. This is actually a good opportunity. And I do promise with the time remaining, I will get to these cases because I think they are important. But there's a public policy concern that the government has raised. And it's actually tied to the statutory tax, which we don't mention in the brief, but which I would like to get to. Well, we can't decide cases based on public policy a lot. We mostly follow the law, aren't we? That's exactly right. And that's our principal argument is that there's nothing within the statute itself that disqualifies these individuals from the MVRA. But to Judge Lydon's concern about, well, are we arming potential drug dealers with more resources? And is that something that the court and the U.S. Attorney's Office should be in the business of doing? If we dispute that factually, but I think more fundamentally, the MVRA and restitution generally should not be a launching pad for defendants to investigate their victims. You could certainly have a scenario where a defendant robs a store of its money. Accepting the argument that we should concerned about the sources of that income, then in the proceedings, it's the underlying proceedings itself and at the sentencing phase, defendant has every right to start demanding tax returns to verify sources of income. If there's been any allegations about some sort of misdealings in the past, they're going to investigate those. In other words, where courts have historically and routinely treated victims as victims, under this new precedent, they're going to be revictimized all over again. And this is actually, I think that Congress anticipated this because in 18 USC 3664, which is the enforcement provision of the MVRA, subsection G1, Congress states that, and I quote, no victim shall be required to participate in any phase of a restitution order. So if we are now going to accept the principle that victims have to justify where their money came from and ignore the harms that that's going to visit upon victims and ignore how this is going to overburden proceedings, this runs right in the face of what Congress told us shouldn't happen. So the fear is that the defendant will say they're criminals and all their property is criminal proceeds and realistically, unless the victim comes in and says that's not true, they're going to be effectively compelled to participate. I believe so. That's the danger. I see that I am nearly over my time here and- You're in the red light. Yeah, go ahead. As long as you get questions, you go ahead and answer. I like that policy. To just address the two questions, let me start with the Eastern District of North Carolina case. And I think the distinction there is the fact findings that occurred in this case, or the absence of fact findings that occurred in this case, and the fact findings that sounds like occurred exactly in the Eastern District of North Carolina case. There is no evidence or there is no finding that the money stolen from Mr. Stevenson, which is the $204,000 of the $228,000, but that was tied to illegal proceeds. And with Mr. Whiting, it's mixed. There's some evidence suggesting it is connected, but there's also evidence he obtained this money lawfully through being a painter. So there's a factual difference between those cases. And as for Martinez, there's two issues with this case. First, this was a 1997 decision from the District of New Mexico. The MVRA, of course, was passed in 1996. It appears to be actually one of the first cases that addressed the MVRA. And the reason why that's relevant is because the court actually analyzed the issue of restitution under both the BWPA and the MVRA. And reading that, it's sort of bizarre why they would do that because the offense was clearly an MVRA offense, but then buried in one of the footnotes, the court says that it has serious concerns about the constitutionality of the MVRA. Of course, the District Court of New Mexico, respectfully, has turned out to be wrong on that issue. But when you read the court's analysis and why it arrived at its decision, it goes through a variety of mitigating circumstances of the defendant and how this terrible fall from grace and sort of mitigating circumstances behind a crime. In other words, the District Court there, its decision not to order restitution was very much driven by circumstances of the crime and the defendant in that case. But I guess more to your point, and I'll hopefully end with this, to the extent that the court is looking for a limiting principle here, Martinez provides it, as does the District Courts of DC's decision in Scanlon. Martinez decided not to order restitution to the victims in that case. And the reason why it was able to do that, because it hung its hat on extensive state and federal litigation, which found conclusively that the casino had been illegally gambling at the time of the robbery. So in other words, there had been an outside judicial body that made a legal, factual legal determination that these were illegal proceeds. And Scanlon actually, it doesn't, Scanlon doesn't hang its hat on that same principle, but it gives, Scanlon says it is going to order restitution because there's been no factual finding by another court that these are illegal proceeds. So to the extent that the court is looking for some sort of limitation to what the government's arguing, um, although I don't think that we need to get there, one limitation could be where a prior court has determined that is not, cannot be the property of the victim and that that could alleviate some of the court's concerns. Your position, Judge Blake should be affirmed straight up. Yes, Your Honor. All right. Thank you very much. Thank you. Appreciate it. Commissioner Reuter. Your Honor, uh, thank you. Council, uh, cited to 18 U.S.C. 3664 G.I., and it does say that a person who may be a victim is not required. It's not required to participate. It doesn't mean that they cannot be asked. If a whole lot of difference between the way the government is suggesting that the meaning of that particular phrase, I would suggest if a person who's a victim wishes not to participate, it could be because that person is already Stevenson or that person is Sean Whitey and they can't come in because it's because they had a traumatic experience and they don't want to have to relive it by going into a court and testifying again about the crime for which they were a victim, making them a victim again. That may very well be a fact, but I would suggest to this, our district court judges are called upon to do that every day in all kinds of contexts. We have a system of laws and quite frankly, to permit someone willy-nilly to walk away with $200,000 without. So let me give you a hypo that's based on the government's argument. Like say tonight, someone breaks into my house and steals an end table from my living room. And they're convicted of Hobbs Act robbery, maybe my spouse's home. So they're convicted of Hobbs Act robbery, assuming you can meet the interstate commerce requirement. They're convicted of Hobbs Act robbery. And then there's the question of whether I get restitution for the table they stole. And they say, prove to me that you own that table. Prove to me that table isn't stolen judge. The victim can't prove that's really his table. It could easily be fruits of a crime. So you can't order restitution for it. Your Honor, at a sentencing hearing, it can be done by a proffer. It can be done by an affidavit. From whom? Doctor, at a sentencing hearing. No, but an affidavit from whom? From me, the victim? From the person who's seeking to have the destruction of the TV restored. No, but in an MVRA proceeding, the person seeking restitution is the government on behalf of the victim. So when the defendant says that my end table is not my end table because I stole it from somebody else, you're saying the response is that I, well, I could just submit an affidavit saying it's really my end table, at which point you're effectively requiring, you're essentially giving defendants the ability to, as a practical matter, require victims to participate in the restitution hearing because the minute the defendant alleges that it's ill-gotten gains, no restitution. No, I don't think that's the way it would work at all, Your Honor, quite respectfully. Just because a defendant says something doesn't mean it's going to be so. So you think, so the rule you propose is that, what, the defendant has the, are you saying that the defendant has the burden of proving the property is ill-gotten? Like, how would this, how would this proceeding you're contemplating before the district court even work? So the defendant says, I think that's bad stuff. Do they have to, like, plead it under Twombly and Iqbal? Do they have to introduce evidence? Is there a prima facie obligation? Who has the burden of proof? On that, we don't know because it has never happened before because under the MVRA, there's only these two exceptions, the so-called co-conspirator exception and the prior proceeding exception, which counsel just alluded to. Those are the only two ways that this has come up before. Our suggestion to this court is, our plea to this court is, is that there should be a third, if you want to call it, to walk away with it. You want a judicial exception? I wanted a judicial exception. Now, there is one now, Judge King, as the government has already posited, where it's happened to them before the person got to a sentencing period, it was already determined at some other proceeding that the victim was not entitled. That's not really what you want. Well, if it hasn't already happened, Judge King, the only way that one can get around not allowing a so-called victim to get away with ill-gotten gains is to have a sentencing hearing and to take that very issue up. That's what we think should have happened in this case. Maurice Stevenson paid $900 a week to the truck driver, he said, after taxes and so on, he takes home 600 bucks. He has two weeks vacation, works 50 weeks out of the year, he probably takes home around $40,000, $30,000 in cash. He owns two homes. He has 10 kilograms of cocaine in his house. He just had a half a kilogram ripped off by the Baltimore County Police Department. Don't you think there should be a suggestion that the 200 grand was not legally gotten? Of course there should be. It's obvious it shouldn't be. Same way with Mr. Whiting. Well, as Judge- But the Constitution generally writes the statutes, not the judges. I'd say this, Judge King- I interrupted Judge Leiden, so we're going to give her some time here, too. Yeah, no, no. No, I would just say Judge Heitens has already pointed out, too, though, that you do have this provision in the act about if return of the property is impracticable. And as we sit here and discuss hypos and go back and forth on all this, I feel we've come close to making that argument that perhaps it's impractical here. And, Your Honor, that would be the decision of the district judge. Right. Once he or she hears preliminarily what it's all about, a decision could be made that, I'll hear it proper, and nope, in this case, it's not going to work. Well, we didn't- That's right. In this case, unlike the end table, we wouldn't even have to require the victim. We wouldn't have to do the proper because we have testimony in the record. We have admissions. We have immunity. It comes very, very close to a finding of this being ill-gotten gains or some portion of it being ill-gotten gains. Great. I would cite to a rifler, that's 446 Fed Third 65, which is also in the briefs. But the court makes it very clear how it feels. It feels like a lot of other of the court, of the judge, of the decisions we've heard. But it makes the point that if a person could not win a lawsuit for return of its property, that it should not be able to get it under the MVRA. In other words, the MVRA would now become a collection agency for people who sometimes don't deserve it. And the federal courts ought not to allow that to happen. With that, I submit, Morris. Thank you so much. Thank you very much, Mr. Reuter. And as I said before, I know that your court appointed and we really appreciate your work. It would be impossible for us to do ours without lawyers like you. Judge King, I would say this. We don't know where that money is, but we know that I don't have it. Thank you. We appreciate it. And if we could do so, we'd come down and greet counsel right now and take your hands and greet you personally. But we're not doing that now because of the pandemic. When you come back next time, I hope we are doing that and we'll see you then. Thank you very much. And with that, Madam Clerk, we'll take a brief recess.
judges: Robert B. King, Toby J. Heytens, Sherri A. Lydon